IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

   v.

MARIN ALLIANCE FOR MEDICAL
MARIJUANA, and LYNETTE SHAW,

          Defendants.

                                 /

No. C 98-00086 CRB

**ORDER RE MOTION TO DISSOLVE
PERMANENT INJUNCTION**

      The Marin Alliance for Medical Marijuana ("MAMM") asks this Court to dissolve a permanent injunction that this Court entered against it in 2002. See Mot. Dissolve Perm. Inj. (dkt. 262). Having reviewed the filings and accompanying papers, the Court DENIES the motion to dissolve the injunction. However, the enforcement of said injunction must be consistent with the new directive of Congress in Section 538 of the Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. 113-235, 128 Stat. 2130 (2014) ("2015 Appropriations Act"),[1] which prohibits the Department of Justice from expending any funds in connection with the enforcement of any law that interferes with California's ability to "implement [its] own State law[] that authorize[s] the use, distribution, possession, or cultivation of medical marijuana." See 2015 Appropriations Act § 538. As long as Congress

---

[1] Congress extended the force of Section 538 by passing the Continuing Appropriations Act of 2016 ("2016 Appropriations Act"), Pub. L. 114-53, § 103, 129 Stat. 502 (2015).

1  precludes the Department of Justice from expending funds in this manner, the permanent

2  injunction will only be enforced against MAMM insofar as that organization is in violation

3  of California "State laws that authorize the use, distribution, possession, or cultivation of

4  medical marijuana." See id.; Fed. R. Civ. P. 60(b).

5  **I.      BACKGROUND**

6  As a matter of federal law, marijuana is prohibited as a Schedule I drug under the

7  Controlled Substances Act ("CSA").  21 U.S.C. § 812(c).  But under state law, California's

8  Compassionate Use Act of 1996 exempted from state criminal prosecution physicians,

9  patients, and primary caregivers who possess or cultivate marijuana for

10  medicinal purpose with a physician's recommendation.  See Cal. Health and Safety Code

11  Ann. §§ 11362.5 ("Compassionate Use Act").  The Compassionate Use Act was passed in a

12  state-wide November 1996 referendum with the support of 56% of voters.  United States v.

13  Cannabis Cultivators Club, 5 F. Supp. 2d 1086, 1091 (N.D. Cal. 1998) (dkt. 61).

14  This Court has a lengthy history with this defendant on these issues.  In 1998, the

15  Government filed an action seeking declaratory and injunctive relief against MAMM (and

16  five other medical marijuana dispensaries, all of which were deemed related and reassigned

17  to this Court) on the grounds that it was engaged in the distribution of marijuana in violation

18  of the CSA.  See 21 U.S.C. §§ 801 et seq.  At that time, the City and County of San

19  Francisco and other cities in which the related defendants are located, acting as amici curiae,

20  "urge[d] the Court not to adopt the injunctive relief sought by the federal government

21  because of the adverse consequences an injunction would have on the public health of their

22  citizens." Cannabis Cultivators Club, 5 F. Supp. 2d at 1094.  But this Court determined that

23  the preliminary injunction "must be granted" on the grounds of there being "a strong

24  likelihood that defendants' conduct violates the Controlled Substances Act, [and thus] the

25  Supreme Clause of the United States Constitution requires that the Court enjoin further

26  violations of the Act." Cannabis Cultivators Club, 5 F. Supp. 2d at 1091, 1105.

27  Thereafter, defendants openly violated this Court's preliminary injunction, which

28  prompted the Government to initiate contempt proceedings.  In the litigation that ensued,

**United States District Court**
For the Northern District of California

2

1    defendants sought to modify the preliminary injunction to exclude distributions of marijuana

2    that were medically necessary, which this Court denied on October 16, 1998.  See Order (dkt.

3    174).  The Ninth Circuit reversed this Court in an interlocutory appeal of that decision,

4    United States v. Oakland Cannabis Buyers' Co-Op ("OCBC"), 190 F.3d 1109, 1115 (9th Cir.

5    1999), and in turn were reversed by the Supreme Court, United States v. OCBC, 532 U.S.

6    483 (2001).  There, the Supreme Court held that there is no medical necessity exception to

7    the CSA's prohibition on the manufacture and distribution of marijuana.  OCBC, 532 U.S. at

8    486.  In so doing, the Supreme Court explained that even when a district court is exercising

9    its equity jurisdiction in the course of fashioning an injunction, its usual discretion to

10   "consider the necessities of the public interest" was "displaced" by the "judgment of

11   Congress, deliberately expressed in legislation."  Id. at 496–98.  As applied here, then, the

12   district court may weigh whether an injunction should be the means of enforcing the statute

13   instead of another permissible means of enforcement—"not whether enforcement is

14   preferable to no enforcement at all."  Id. at 497–98.  "Consequently, when a court of equity

15   exercises its discretion, it may not consider the advantages and disadvantages of

16   nonenforcement of the statute, but only the advantages and disadvantages of 'employing the

17   extraordinary remedy of injunction' over the other available methods of enforcement."  Id. at

18   498 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).  "To the extent the

19   district court considers the public interest and the conveniences of the parties, the court is

20   limited to evaluating how such interest and conveniences are affected by the selection of an

21   injunction over other enforcement mechanisms."  Id.

22        Following the Supreme Court's ruling, the OCBC defendants moved to dissolve their

23   preliminary injunctions in this Court and the Government moved for summary judgment and

24   for a permanent injunction.  See Mem. and Order May 3, 2002 (dkt. 229).  This Court

25   granted the Government's motion for summary judgment and, after the defendants declined

26   to reassure this Court that they would not resume their distribution activity, entered a

27   permanent injunction on June 10, 2002.  See United States v. Cannabis Cultivator's Club,

28   No. 98-85 et al., 2002 WL 1310460 (June 10, 2002); Mem. and Order June 20, 2002 (dkt.

**United States District Court**
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1    247); Permanent Injunction (dkt. 248).

2           For the next near-decade, defendant MAMM continued to operate a medical

3    marijuana dispensary out of its same location.  The United States Attorney's Office waited

4    until September 2011 to send cease and desist letters to MAMM and other medical marijuana

5    dispensaries in the area.  The Mayor of the Town of Fairfax responded with a series of letters

6    to United States Attorney Melinda Haag stating that MAMM was operating as a model

7    business in careful compliance with its local Use Permit in a "cooperative and collaborative

8    relationship" with the community.  See Bragman Letter October 2011, Anton Aff. in Support

9    of Defendant's Mot. to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 2.  The Mayor

10   explained that Marin has "the highest documented rate of breast cancer in the United States,"

11   and Marin's breast cancer patients have especially benefitted from MAMM.  Id.  He asserted

12   that "elimination of this vital community access facility would effectively prevent [patients]

13   from obtaining medical marijuana," with the "paradoxical impact of increasing public safety

14   concerns for local law enforcement" if the market were pushed underground.  Id.  According

15   to the letter, the "record clearly establishes that [MAMM] has been in clear and unambiguous

16   compliance with existing state and local laws providing for the medical use of marijuana."

17   Id.  To avoid "needlessly increas[ing] the suffering of hundreds of patients who have come to

18   rely on [MAMM] as a safe access point for medical marijuana," he urged Haag "to exercise

19   [her] discretion to reconsider [her] office's evaluation of the legal viability of [MAMM] in

20   light of its documented record of lawful operation and benefit to the community."  Id.[2]

21          The U.S. Attorney's Office nevertheless pressed its forfeiture action.  In response,

22   MAMM and three other dispensaries filed suit seeking to enjoin the Government from taking

23   any enforcement action against them.  See Am. Compl. (dkt. 21), Marin Alliance For Med.

24   Marijuana v. Holder, 866 F. Supp. 2d 1142 (N.D. Cal. 2011) (No. 11-5349 SBA).  The court

25

26          [2] A follow-up letter from the Mayor in December 2014 stated his belief that "changed
     circumstances justify reconsideration of the District Court's injunction," particularly the struggles of
27   Marin patients who were left without a legal medical cannabis dispensary, the loss of tax revenues to
     the town, the uptick of drug-related arrests, and the change in the social and legal perception of medical
28   marijuana.  See Bragman Letter Dec. 2014, Anton Aff. in Support of Defendant's Mot. to Dissolve
     Perm. Injunction (dkt. 262-3) at Ex. 3.

**United States District Court**
For the Northern District of California

1  denied the Plaintiffs' motion for a temporary restraining order, denied their motion for a

2  preliminary injunction, and granted the Government's motion to dismiss.  See Marin

3  Alliance, 866 F. Supp. 2d 1142 (N.D. Cal. 2011); Marin Alliance, No. 11-5349, 2012 WL

4  2862608 (N.D. Cal. July 11, 2012).

5          Seven days after the initial complaint in that litigation was filed, the Government

6  initiated a forfeiture action against the property on which MAMM operated.  See Compl.,

7  United States v. Real Property Located at 6 School Street, Fairfax, California, No. 11-cv-

8  5596 (filed Nov. 18, 2011).  The forfeiture complaint cited this Court's permanent injunction

9  and MAMM's violation of the CSA given that it was operating a medical marijuana

10  dispensary.  See id.  The litigation was resolved in a settlement with the property owner, who

11  agreed no longer to rent the property to MAMM in exchange for the Government's

12  agreement not to seize the property.  See Stipulation and Order ¶ 4 (dkt. 18), No. 11-5596.

13          Then the legal and factual circumstances changed.  Section 538 of the 2015

14  Appropriations Act—which governed Treasury Funds for the fiscal year ending September

15  30, 2015, and which has now been extended until December 11, 2015, by the 2016

16  Appropriations Act, Pub. L. 114-53, § 103, 129 Stat. 502 (2015)—states as follows:

17          None of the funds made available in this Act to the Department of Justice may be

18          used, with respect to the States of . . . California [and 32 other states], to prevent such

19          States from implementing their own State laws that authorize the use, distribution,

20          possession, or cultivation of medical marijuana.

21  2015 Appropriations Act § 538.  MAMM argues that the injunction is now unenforceable

22  under Section 538 and should therefore be dissolved.

23  **II.     LEGAL STANDARD**

24          Federal Rule of Civil Procedure 60 provides for relief from a judgment or order under

25  the following circumstances, as relevant here:

26          (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and

27          just terms, the court may relieve a party or its legal representative from a final

28          judgment, order, or proceeding for the following reasons:

**United States District Court**
For the Northern District of California

1    . . .

2    (5) the judgment has been satisfied, released or discharged; it is based on an earlier

3    judgment that has been reversed or vacated; or applying it prospectively is no longer

4    equitable; or

5    (6) any other reason that justifies relief.

6    Fed. R. Civ. P. 60(b).  Relief under Rule 60(b) is counterbalanced against "the strong public

7    interest in the timeliness and finality of judgments."  See Phelps v. Alameda, 569 F.3d 1120,

8    1135 (9th Cir. 2009).  Typically, "[a] party seeking modification or dissolution of an

9    injunction bears the burden of establishing that a significant change in facts or law warrants

10   revision or dissolution of the injunction."  Alto v. Black, 738 F.3d 1111, 1120 (9th Cir. 2013)

11   (quoting Sharp v. Weston, 233 F.3d 1166, 1170 (9th Cir.2000)).  "That requirement

12   presumes that the moving party could have appealed the grant of the injunction but chose not

13   to do so, and thus that a subsequent challenge to the injunctive relief must rest on grounds

14   that could not have been raised before."  Id. (citing Transgo, Inc. v. Ajac Transmission Parts

15   Corp., 911 F.2d 363, 365 (9th Cir.1990)).  In order to meet their burden under Rule 60(b),

16   MAMM would have to establish that Section 538 represents a significant change in the law

17   that "renders continued enforcement [of the injunction] detrimental to the public interest."

18   Horne v. Flores, 557 U.S. 433, 447 (2009) (as cited and characterized by the Government's

19   supplemental brief (dkt. 272) at 12).[3]

20

21

22   [3] At the initial stage, "'a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable

23   injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent

24   injunction.'" Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156–57 (2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). "An injunction should issue only if the traditional

25   four-factor test is satisfied." Id. at 157 (citing Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 380–82 (2008)). "It is not enough for a court considering a request for injunctive relief to

26   ask whether there is a good reason why an injunction should not issue; rather, a court must determine that an injunction should issue under the traditional four-factor test set out above." Id. at. 158.

27   Even if a Plaintiff survives this inquiry, "[i]njunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion." Natural

28   Resources Defense Coucil, Inc. v. Winter, 508 F.3d 885, 886 (9th Cir. 2007) (later litigation reversed on other grounds by Winter, 555 U.S. at 12).

**United States District Court**
**For the Northern District of California**

1    **III.    DISCUSSION**

2    The plain reading of the text of Section 538 forbids the Department of Justice from

3    enforcing this injunction against MAMM to the extent that MAMM operates in compliance

4    with California law.  Although the parties argued at length whether equitable

5    concerns—namely the harmful effects engendered by MAMM's closure and the

6    demonstrable lack of harm that resulted from the 14 years in which it operated—support the

7    dissolution or modification of the injunction, these arguments can be dismissed out of hand.

8    MAMM's approach stems from Rule 60(b)(5)'s provision that the court may grant relief

9    from a final judgment when "applying it prospectively is no longer equitable."  See Fed. R.

10    Civ. P. 60(b)(5).  But this Court continues to be bound by OCBC's prohibition on conducting

11    public policy balancing in determining whether to enjoin behavior that violates the CSA.  See

12    OCBC, 532 U.S. at 496–98.  "To the extent the district court considers the public interest and

13    the conveniences of the parties, the court is limited to evaluating how such interest and

14    conveniences are affected by the selection of an injunction over other enforcement

15    mechanisms."  Id. at 498.

16    In other words, this Court is not in a position to "override Congress' policy choice,

17    articulated in a statute, as to what behavior should be prohibited."  See id. at 497.  On the

18    contrary: This Court's only task is to interpret and apply Congress's policy choices, as

19    articulated in its legislation.  And in this instance, Congress dictated in Section 538 that it

20    intended to prohibit the Department of Justice from expending any funds in connection with

21    the enforcement of any law that interferes with California's ability to "implement [its] own

22    State law[] that authorize[s] the use, distribution, possession, or cultivation of medical

23    marijuana."  2015 Appropriations Act § 538.  The CSA remains in place, and this Court

24    intends to enforce it to the full extent that Congress has allowed in Section 538, that is, with

25    regard to any medical marijuana not in full compliance with "State law[] that authorize[s] the

26    use, distribution, possession, or cultivation of medical marijuana."  Id.

27    The Government's contrary reading so tortures the plain meaning of the statute that it

28    must be quoted to ensure credible articulation.  Specifically, the Government contends that

7

**United States District Court**
For the Northern District of California

1 | Section 538 proscribes

2 |      "the use of appropriated funds to 'prevent' states from 'implementing their

3 |      own' medical marijuana laws.  Such prohibited uses could include, for

4 |      example, federal actions that interfered with a state's promulgation of

5 |      regulations implementing its statutory provisions, or with its establishment of a

6 |      state licensing scheme.  However, such uses do not include CSA enforcement

7 |      actions against individuals or private businesses because such actions do not

8 |      prevent a State from implementing its own laws. . . . [T]here is no evidence in

9 |      the record that California has been impeded in any way in implementing its

10 |      own State laws during the thirteen years the permanent injunction at issue has

11 |      been in effect."

12 | Gov't Supp. Brief (dkt. 272) at 6 & n.2.  Where to start?  An initial matter, perhaps, is the

13 | contradiction inherent in the Government's assertion that enjoining any one medical

14 | marijuana dispensary—here, MAMM—does not impede California's implementation of its

15 | medical marijuana laws.  The Government appears to mean that, in the grand scheme of

16 | things, shutting down any given dispensary may be presumed to have such a minimal effect

17 | on California's medical marijuana regime that it does not "prevent" California from

18 | "implementing" its State law.  But if anything, the Government's reliance on the operation of

19 | _other_ medical marijuana dispensaries to justify enjoining _this_ dispensary is an _a fortiori_

20 | reason why the injunction is inappropriate in its present form.

21 |      Moreover, this drop-in-the-bucket argument is at odds with fundamental notions of

22 | the rule of law.  It has never been a legal principle than an otherwise impermissible

23 | government intrusion can be countenanced because any one defendant is a small piece of the

24 | legal landscape.  Section 538 either allows the DOJ to shut down medical marijuana

25 | dispensaries for violating the CSA, or it does not.  It contains no limitation that requires a

26 | State to implement its medical marijuana laws in one way or not another—via a centralized

27 | state dispensary, for example, or through highly regulated local private dispensaries—before

28 | Section 538's prohibition is triggered.  Rather, Section 538 takes as a given that States

United States District Court
For the Northern District of California

1   implement their medical marijuana laws in the ways they see fit.  California has chosen its

2   way: allowing private dispensaries to operate under strict state and local regulation.

3   California's Compassionate Use Act states that its purpose is "[t]o ensure that seriously ill

4   Californians have the right to obtain and use marijuana for medical purposes where that

5   medical use is deemed appropriate and has been recommended by a physician . . ."  Cal.

6   Health & Safety Code § 11362.5(A).  In the years following the passage of the

7   Compassionate Use Act, the California Legislature enacted extensive legislation

8   implementing and regulating the medical marijuana regime.  The legislature established a

9   detailed process through which patients receive permits from county health departments.  See

10  Cal. Health & Safety Code Ann. §§ 11362.7–11362.83 (West 2015).  California law specifies

11  that medical marijuana dispensaries must be located outside a 600-foot radius of any school

12  and empowers local authorities to adopt additional restrictions.  See id. at § 11362.768.  It

13  also requires the State Attorney General to "develop and adopt appropriate guidelines to

14  ensure the security and nondiversion of marijuana grown for medical use" by qualified

15  patients.  Id. at § 11362.81.  These extensive Guidelines explain a detailed regime in which

16  qualified, licensed patients may obtain medical marijuana from private dispensaries operating

17  as nonprofit collectives or cooperatives under extensive licensing requirements for business

18  incorporation, record keeping, taxation, verification, security, and the like.  See Guidelines

19  for the Security and Non-Diversion of Marijuana Grown for Medical Use at Part IV (2008),

20  http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf.  The

21  Town of Fairfax, operating under its authority in Cal. Health & Safety Code § 11362.768,

22  added its own extensive local permitting requirements, which mandate that a medical

23  marijuana dispensary comply with 72 conditions regulating every conceivable aspect of the

24  time, place, and manner of the dispensary's operation.  See Amended Conditions of Approval

25  for the Marin Alliance Medicinal Marijuana Dispensary Use Permit Number 97-UP-2,

26  Approved on August 15, 2002, MAMM Supplemental Brief (dkt. 271) at Ex. 11.

27      In sum, this intricate legal framework "implements" California's medical marijuana

28  laws by allowing licensed patients to obtain medical marijuana from highly regulated non-

**United States District Court**
For the Northern District of California

1   profit cooperative dispensaries.  Against this backdrop, Section 538 states that "None of the

2   funds made available in this Act to the Department of Justice may be used, with respect to

3   the States of . . . California [and 32 other states], to prevent such States from implementing

4   their own State laws that authorize the use, distribution, possession, or cultivation of medical

5   marijuana." 2015 Appropriations Act § 538.  To "implement," of course, means to "carry

6   out, accomplish, to give practical effect to and ensure of actual fulfillment by concrete

7   measures." Merriam-Webster Dictionary (2015).  It defies language and logic for the

8   Government to argue that it does not "prevent" California from "implementing" its medical

9   marijuana laws by shutting down these same heavily-regulated medical marijuana

10  dispensaries; whether it shuts down one, some, or all, the difference is of degree, not of kind.

11  And, contrary to the Government's representation, the record here does support a finding that

12  Californians' access to legal medical marijuana has been substantively impeded by the

13  closing of dispensaries, and the closing of MAMM in particular.  See Bragman Letter

14  December 2014, Anton Aff. in Support of Defendant's Mot. to Dissolve Perm. Injunction

15  (dkt. 262-3) at Ex. 3 ("Since the departure of the Marin Alliance, the County of Marin, with a

16  population of over 250,000, has not had a legal medical cannabis dispensary to serve the

17  local patient population.  Marin County has exceptionally high rates of breast and prostate

18  cancer.  Those patient groups both benefit from proven medical benefits of cannabis but now

19  are unable to have safe access in their local community.") .

20        Given that the statutory language of Section 538 is plain on its face, the Court "must

21  enforce it according to its terms," see King v. Burwell, 135 S. Ct. 2480, 2489 (2015), and

22  need not consider the legislative history.  But it comes as no surprise to the Court that the

23  legislative history of Section 538 points in only one direction: away from the counterintuitive

24  and opportunistic meaning that the DOJ seeks to ascribe to it now.  Without exception, it

25  appears that both the supporters and opponents of Section 538 in Congress at least agreed

26  that the words mean what they appear to mean.  See, e.g., 60 Cong. Rec. 82, H4914, H4984

27  (daily ed. May 29, 2014) (statement of Cosponsor Rep. Dina Titus) ("[T]his commonsense

28  amendment simply ensures that patients do not have to live in fear when following the laws

**United States District Court**
For the Northern District of California

1  of their States and the recommendations of their doctors.  Physicians in those States will not

2  be prosecuted for prescribing the substance, and local businesses will not be shut down for

3  dispensing the same.") (emphasis added); 160 Cong. Rec. 82, H4914, H4984 (daily ed. May

4  29, 2014) (statement of Rep. Alcee Hastings) ("Specifically, the bill is a bipartisan

5  appropriations measure that looks to prohibit the DEA from spending funds to arrest state-

6  licensed medical marijuana patients and providers.  Many of my colleagues and their

7  constituencies agree that patients who are allowed to purchase and consume medical

8  marijuana in their respective states should not be punished by the federal government.")

9  (emphasis added); 160 Cong. Rec. 82, H4914, H4984 (daily ed. May 29, 2014) (statement of

10  Lead Sponsor Rep. Sam Farr) ("This is essentially saying, look, if you are following State

11  law, you are a legal resident doing your business under State law, the Feds just can't come in

12  and bust you."); 160 Cong. Rec. 70, H4020, H4053–55 (daily ed. May 9, 2014) (statement of

13  Lead Sponsor Dana Rohrabacher) ("The harassment from the [DEA] is something that

14  should not be tolerated in the land of the free.  Businesspeople who are licensed and certified

15  to provide doctor recommended medicine within their own States have seen their businesses

16  locked down, their assets seized, their customers driven away, and their financial lives ruined

17  by very, very aggressive and energetic Federal law enforcers enforcing a law . . . Instead of

18  continuing to finance this repressive and expensive approach, we should be willing to allow

19  patients and small businesses to follow their doctors' advice under the watchful eye of State

20  law enforcement and regulators . . . ") (emphasis added); 160 Cong. Rec. 82, H4914,

21  H4983–84 (daily ed. May 29, 2014) (statement of Rep. John Fleming in opposition) ("What

22  this amendment would do is, it wouldn't change the law, it would just make it difficult, if not

23  impossible, for the DEA and [DOJ] to enforce the law.").

24      In fact, the members of Congress who drafted Section 538 had the opportunity to

25  respond to the very same argument that the DOJ advances here.  In a letter to Attorney

26  General Eric Holder on April 8, 2015, Congressmen Dana Rohrabacher and Sam Farr

27  responded as follows to "recent statements indicating that the [DOJ] does not believe a

28  spending restriction designed to protect [the medical marijuana laws of 35 states] applies to

11

1  specific ongoing cases against individuals and businesses engaged in medical marijuana

2  activity":

> 3  As the authors of the provision in question, we write to inform you that this
>
> 4  interpretation of our amendment is emphatically wrong.  Rest assured, the
>
> 5  purpose of our amendment was to prevent the Department from wasting its
>
> 6  limited law enforcement resources on prosecutions and asset forfeiture actions
>
> 7  against medical marijuana patients and providers, including businesses that
>
> 8  operate legally under state law.  In fact, a close look at the Congressional
>
> 9  Record of the floor debate of the amendment clearly illustrates the intent of
>
> 10  those who sponsored and supported this measure.  Even those who argued
>
> 11  against the amendment agreed with the proponents' interpretation of their
>
> 12  amendment.

13  Letter to Attorney General Holder, Anton Aff. in Support of Defendant's Mot. to Dissolve

14  Perm. Injunction (dkt. 262-3) at Ex. 7.  Having no substantive response or evidence, the

15  Government simply asserts that it "need not delve into the legislative history here" because

16  the meaning of the statute is clearly in its favor.  The Court disagrees.

17  To the extent the Government cites a few cases addressing Section 538, none are

18  analogous or even particularly favorable to the Government's position.  In each one of the

19  cases that the Government cites, the individual or organization at issue was not operating in

20  compliance with State law—in which case this Court agrees that Section 538 does not apply

21  by its own terms.  See, e.g., United States v. Tote, No. 1:14-mj-212, 2015 WL 3732010 (E.D.

22  Cal. June 12, 2015 ) (rejecting a criminal defendant's argument that his criminal prosecution

23  for driving under the influence of marijuana on federal land should be dismissed under

24  Section 538 because Section 538 did not repeal federal laws criminalizing the possession of

25  marijuana and "Defendant was using marijuana in a manner that violates California law");

26  United States v. Firestack-Harvey, No. 13-cr-24, 2015 WL 3533222 (E.D. Wash. June 4,

27  2015) (rejecting the applicability of Section 538 to a criminal prosecution of three individuals

28  because the conduct at issue involved operating a for-profit marijuana business that was not

United States District Court
For the Northern District of California

12

1   authorized by Washington state law); <u>United States v. Silkeutsabay</u>, No. 13-cr-140, 2015 WL

2   2376170 (E.D. Wash. May 18, 2015) (concluding that Section 538 was "inapplicable to

3   prosecution of Defendants' case where over 1000 marijuana plants were seized—a number

4   far in excess of that authorized under Washington's medical marijuana law").  A single Ninth

5   Circuit case held that a prohibition on the deduction of expenses in connection with illegal

6   drug trafficking applied to bar a medical marijuana dispensary from deducting its business

7   expenses to eliminate a tax deficiency.  <u>See</u> <u>Olive v. Commissioner of Internal Revenue</u>, 792

8   F.3d 1146, 2015 WL 4113811 (9th Cir. 2015).  In that separate context, the Ninth Circuit

9   explained that "Section 538 does not apply" because the government was "enforcing only a

10   tax, which does not prevent people from using, distributing, possessing, or cultivating

11   marijuana in California. Enforcing these laws might make it more costly to run a dispensary,

12   but it does not change whether these activities are authorized in the state."  <u>See</u> <u>id.</u> at *4.

13   **IV.    CONCLUSION**

14          For the foregoing reasons, as long as Congress precludes the Department of Justice

15   from expending funds in the manner proscribed by Section 538, the permanent injunction

16   will only be enforced against MAMM insofar as that organization is in violation of California

17   "State laws that authorize the use, distribution, possession, or cultivation of medical

18   marijuana."[4]  <u>See</u> 2015 Appropriations Act § 538; Fed. R. Civ. P. 60(b).

19          **IT IS SO ORDERED.**

20
     Dated: October 19, 2015

21                                                          _____
                                                           CHARLES  R. BREYER
                                                           UNITED STATES DISTRICT JUDGE
22

23

24          [4]  To the Court's recollection, the Government has yet to allege or even suggest that
     MAMM was at any time operating in violation of state law.  The only evidence in the record on
     this point is to the contrary: a letter from the Mayor of Fairfax to United States Attorney Melinda
25   Haag states that "Based upon its satisfaction of the scores of conditions in the Use Permit issued
     by the Town of Fairfax, the record clearly establishes that the Marin Alliance has been in clear
26   and unambiguous compliance with existing state and local laws providing for the medical use
     of marijuana."  <u>See</u> Bragman Letter October 2011, Anton Aff. in Support of Defendant's Mot.
27   to Dissolve Perm. Injunction (dkt. 262-3) at Ex. 2; <u>see also</u> Bragman Letter December 2014, <u>id.</u>
     at Ex. 3 (same).  Rather, the Government has taken the position that the injunction is justified
28   solely because MAMM operates in contravention of the CSA. Whether MAMM in fact operates
     in compliance with California state law is not before the Court at this time.